**PUBLIC HEALTH NURSING SERVICE OF DAKOTA COUNTY, Relator,**

v.

**Roland P. FREEMAN, Respondent.**

No. CX–83–70.

Supreme Court of Minnesota.

Dec. 2, 1983.

---

Robert F. Carolan, Dakota County Atty., David M. Fortney, Asst. County Atty., Hastings, for relator.

Hubert H. Humphrey, III, Atty. Gen., and Laura E. Mattson, Asst. Atty. Gen., St. Paul, for respondent.

PER CURIAM.

Relator, Public Health Nursing Service of Dakota County, a current part-time employer of respondent, Roland P. Freeman, brings for review, by writ of certiorari, the determination of the Commissioner of Economic Security that relator be charged for unemployment compensation benefits paid to respondent.

The issue for decision, one of statutory construction, is whether employers are to be charged for unemployment compensation benefits paid to employees working on a sporadic part-time basis while being laid off from full-time employment with another employer.[1] In the instant case, the dispute is whether an employer of part-time employees may be charged for benefits under Minn.Stat. § 268.06, subd. 5 (1982),[2] where the employment earnings, although diminished in some weeks, did not on the average diminish for weeks within the base period.

In *Zoet v. Benson Hotel Corp.*, 274 N.W.2d 120 (Minn.1978), we said that the commissioner may not charge employer's account for benefits paid to employee who is employed on an intermittent, part-time basis and suffered no reduction in average hours.

■ Following *Zoet*, the legislature changed the statutory language from "substantially equal to part time employment previously furnished" to "provide *weekly* employment equal to at least 90 percent of the part time employment provided in the base period." *See* Act of May 24, 1979, ch. 181, § 4, 1979 Minn.Laws 255, 268 (emphasis added). It must be presumed that the legislature intended to change the court's holding in *Zoet* when it inserted the word "weekly" and revised the formula for charging benefits to an employer's account. The term "weekly" must be read in accordance with the statutory definition of "week" as a "calendar week, ending at midnight Saturday, or the equivalent thereof, as determined in accordance with the regulations prescribed by the commissioner." Minn.Stat. § 268.04, subd. 27 (1982). We interpret the statute to require that employer, who does not want its account to be charged for sporadic, intermittent part-time employment, must have provided the employee with part-time employment each and every week during the base period and continue to provide at least 90% of such employment during the current benefit period.

■ Although the change in section 268.-06, subd. 5, may appear inequitable and may frustrate opportunities for sporadic, intermittent part-time employment, it is not our role to question the wisdom of the legislature. Because, in the instant case, relator did not provide respondent with weekly part-time employment, we are bound to affirm.

Affirmed.

1. Respondent was employed part time by relator and full time by Gem Manufacturing. When respondent was laid off from his full-time position at Gem, he filed a claim for unemployment compensation listing both relator and Gem as his base period employers. He continued working sporadic and intermittent hours for relator as a chore home maintenance worker. He remains employed in that capacity.

2. Minn.Stat. 268.06, subd. 5 (1982), states, in pertinent part:

> Subd. 5. Benefits paid to an individual pursuant to a valid claim shall be charged against the account of his employer as and when paid, except that benefits paid to an individual who earned base period wages for part time employment shall not be charged to an employer that is liable for payments in lieu of contributions or to the experience rating account of an employer if the employer: (1) provided weekly based period part time employment; (2) continues to provide weekly employment equal to at least 90 percent of the part time employment provided in the base period; and (3) is an interested party because of the individual's loss of other employment. The amount of benefits so chargeable against each base period employer's account shall bear the same ratio to the total benefits paid to an individual as the base period wage credits of the individual earned from such employer bear to the total amount of base period wage credits of the individual earned from all his base period employers.